Qam

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **VASHAUN WILLIAMS (#2008-0017916),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 C 3997** |
| | ) | |
| | ) | **Hon. John W. Darrah** |
| **SUPERINTENDENT MARTINEZ, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In October 2010, Plaintiff was allowed to proceed on his individual capacity claims that alleged that Defendants Superintendent Martinez and Captain Plaxico violated Plaintiff's constitutional rights by having him moved from the psych unit to general population so that Plaintiff would not receive his psychotropic medications in retaliation for Plaintiff's previously-filed grievances and lawsuits. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons stated in this order, the motion is granted.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th

Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## LOCAL RULE 56.1 (N.D. ILL.)

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d

1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a proper response to Defendants' statement of uncontested facts. Plaintiff filed a response opposing the motion for summary judgment but he did not contest any of the Defendants' statement of uncontested facts. Because Plaintiff is proceeding *pro se*, the Court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the Court will entertain Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602.

Given the considerations stated above, the Court views Defendants' Rule 56.1 statements supported by the record and not properly rebutted by Plaintiff to be true and uncontested.

**FACTS**

Plaintiff is a pretrial detainee, confined at the Cook County Correctional Center at all times relevant to this action. (Defs.' 56.1(a)(3) Statement ¶ 1.) Superintendent Marilyn Martinez was at all relevant times employed by the Cook County Sheriff's Department and assigned as Superintendent of Division X. (*Id.*, ¶ 2.) Commander Chester Plaxico was at all relevant times employed by the Cook County Sheriff's Department and assigned as a Captain in Division X. (*Id.*, ¶ 3.)

Upon entry into the Cook County Department of Corrections ("CCDOC") in March 2008, Plaintiff was housed in Division X. (Defs.' 56.1(a)(3) Statement ¶ 15.) Division X is a medical and psych dose-by-dose building that accommodates detainees of all security level classifications. (*Id.*, ¶ 16.) Plaintiff has been taking prescription psychotropic medication since 2007. (*Id.*, ¶ 17.) Plaintiff was prescribed the same medications upon entry into the CCDOC, which he received on a dose-by-dose basis in Division X. (*Id.*) Since Plaintiff entered the CCDOC, he has been monitored by a psychiatrist, who he sees every few months. (*Id.*, ¶ 18.)

The CCDOC has established a grievance procedure that is available to all inmates, including Plaintiff. (Defs.' 56.1(a)(3) Statement ¶ 4.) The CCDOC grievance procedure, General Order 14.5, governs the administrative grievance process. (*Id.*, ¶ 5.) Plaintiff is aware of, and understands, the grievance process, including the grievance appeal process. (*Id.*, ¶ 6.) Plaintiff understands that in order to submit a grievance, he must submit the grievance to an officer, a "white shirt" or whoever he comes across. (*Id.*, ¶ 7.)

On May 21, 2009, Plaintiff filed a grievance with his Correctional Rehabilitation Worker ("CRW") that was processed as a request. (Defs.' 56.1(a)(3) Statement ¶ 8.) The grievance alleged that Plaintiff was forced to live on a tier with inmates infected with gastroenteritis. (*Id.*). Commander Plaxico reviewed the request and responded to Plaintiff. (*Id.*).

On December 28, 2009, Plaintiff filed a grievance with his CRW. (Defs.' 56.1(a)(3) Statement ¶ 9.) The grievance was given control number 2009 X 2687. (*Id.*). The grievance alleged that Plaintiff was denied physical therapy and adequate medical care. (*Id.*). Superintendent Martinez reviewed the grievance and referred the matter to the division physician with Cermak Health Services. (*Id.*)

The above two grievances were the only two grievances Plaintiff submitted to Program Services prior to April 3, 2010. (Defs.' 56.1(a)(3) Statement ¶ 10.)

At approximately the end of 2009 or beginning of 2010, while housed on Tier 3-B in Division X, Plaintiff began having suicidal thoughts, started feeling depressed, and began hearing voices more often due to his ongoing criminal case. (Defs.' 56.1(a)(3) Statement ¶ 19.) In light of his condition, Plaintiff requested a psychiatric evaluation. (*Id.*, ¶ 20.) This included a request to Commander Plaxico in March 2010. (*Id.*, ¶ 21.) However, Commander Plaxico just told Plaintiff, "hang yourself and I'll know you are for real." (*Id.*) Plaintiff continued to ask Commander Plaxico for a psychiatric evaluation but Commander Plaxico just teased Plaintiff, telling Plaintiff to "stop crying like a girl, man up," and he would threaten the tier with a lockdown because Plaintiff was complaining and writing grievances. (*Id.*, ¶ 23.) According to Plaintiff, he wrote four or five grievances about Commander Plaxico's unprofessionalism toward Plaintiff and the denial of his request for a psychiatric evaluation. (*Id.*, ¶ 23.) Plaintiff never received a response to the grievances and he does not have a copy of any of the grievances. (*Id.*)

In March 2010, Plaintiff spoke with Superintendent Martinez. On one occasion, Plaintiff told her that the staff was denying him medical attention. (Defs.' 56.1(a)(3) Statement ¶ 24.) Superintendent Martinez told Plaintiff that she did not want to hear Plaintiff's complaint and told him to write a grievance and do whatever he wanted to do. (*Id.*) That same month, Plaintiff told Superintendent Martinez that Commander Plaxico was taking his mental health as a joke and mocking him. (*Id.*, ¶ 25.) During this conversation, Plaintiff threatened to sue Superintendent Martinez. (*Id.*) According to Plaintiff, Superintendent Martinez told Plaintiff, "I don't care what you say, that's my staff, write your grievances like you always do, you're getting out of my

building if it is the last thing I do." (*Id.*, ¶ 26.) Shortly after this conversation, Commander Plaxico came to Plaintiff and hollered at him for going over his head. (*Id.*, ¶ 27.) Commander Plaxico told Plaintiff that he was going to put his hands on him and that he was going to kick him out of the building. (*Id.*)

At the end of March 2010, Tier 3-B in Division X experienced multiple incidents that resulted in injuries to detainees, including a gang fight on March 29, 2010. (Defs.' 56.1(a)(3) Statement ¶ 28.) Due to the increased gang activity on the tier, on April 3, 2010, 32 detainees were moved and transferred off Tier 3-B to either another division or to a different tier within Division X, based on security classification and space availability. (*Id.*, ¶ 29.) The purpose of the mass movement was to separate the detainees housed on the tier to ensure the continued safety of the detainees, the officers, and the institution. (*Id.*, ¶ 30.) Prior to a mass movement of this kind, a list of detainees scheduled to be transferred is forwarded to the Division dispensary so a professional can approve each transfer and identify any restrictions on the detainee's placement outside of Division X. (*Id.*, ¶ 31.)

On April 3, 2010, Plaintiff was one of the detainees transferred in the mass movement from Tier 3-B in Division X. (Defs.' 56.1(a)(3) Statement ¶ 32.) After approval by a medical professional, Plaintiff was moved to Division IX based on his security classification and space availability. (*Id.*, ¶ 33.) Plaintiff was transferred to Division IX along with his cellmate and two other detainees from his tier. (*Id.*, ¶ 36.) The decision to transfer Plaintiff off of Tier 3-B was based on institutional security concerns for detainees and officers. (*Id.*, ¶ 40.)

Medical decisions are the sole province of the Cermak Health Services physicians. (Defs.' 56.1(a)(3) Statement ¶ 34). Neither Defendant had knowledge that Plaintiff was

prescribed psychotropic medication in April 2010, nor did the Defendants take Plaintiff off his medication during that time. (*Id.*, ¶ 35.) Commander Plaxico did not make the decision, nor did he have the authority, to transfer Plaintiff from Division X on April 3, 2010. (*Id.*, ¶ 39.)

Plaintiff was housed in Division IX from April 3, 2010 until April 12, 2010. (Defs.' 56.1(a)(3) Statement ¶ 41.) While housed in Division IX, Plaintiff was not given his prescribed psychotropic medications. (*Id.*, ¶ 42.) While housed in Division IX, Plaintiff had access to a nurse twelve hours a day and a divisional dispensary for primary care. (*Id.*, ¶ 43.) In addition, Division IX had nurses who dispense psychotropic medication to detainees on any tier in the division. (*Id.*)

On April 8, 2010, while housed in Division IX, Plaintiff had a consultation with a female mental health professional. (Defs.' 56.1(a)(3) Statement ¶ 44.) Plaintiff explained that he was not getting his medication, was hearing and seeing things, and was feeling depressed. (*Id.*) After the consultation, Plaintiff was returned to his tier in Division IX, where he remained until April 12, 2010. (*Id.*.) Plaintiff continued to hear things, feel depressed, and have suicidal thoughts after he went back to Division X and was receiving his medication. (*Id.*, ¶ 45.)

On June 24, 2010, Plaintiff submitted a grievance with his CRW in which he alleged that he had not received his medication when he was transferred from Division X to Division IX. (Defs.' 56.1(a)(3) Statement ¶ 47.) The grievance was processed as a request. (*Id.*) Plaintiff received a response to the request sometime after June 29, 2010. (*Id.*, ¶ 48.) Plaintiff was not satisfied with the response. (*Id.*) Plaintiff did not submit any other grievance related to his April 3, 2010, transfer. (*Id.*, ¶ 49.) Plaintiff did not file a grievance complaining that jail officials retaliated against him for filing grievances or lawsuits. (*Id.*) Plaintiff did not submit any

grievances related to Superintendent Martinez or Commander Plaxico prior to April 3, 2010. (*Id.*, ¶ 10). On and prior to April 3, 2010, Superintendent Martinez had no knowledge that Plaintiff had filed any other grievances other than the December 28, 2009 grievance. (*Id.*, ¶ 11.) On and prior to April 3, 2010, Commander Plaxico had no knowledge of any other grievances filed by Plaintiff other than the May 21, 2009, grievance that was handed as a request. (*Id.*, ¶ 12.)

Other than the present action, Plaintiff had only filed one other lawsuit against Sheriff Dart and/or his employees. (Defs.' 56.1(a)(3) Statement ¶ 13.) The lawsuit was not initiated until July 6, 2010, Case No. 10 C 4174. (*Id.*) Neither Defendant had knowledge of whether Plaintiff had filed lawsuits against the Cook County Sheriff's Department, Sheriff Dart, or their agents or employees on or before April 3, 2010. (*Id.*, ¶ 14.)

## ANALYSIS

Defendants first argue that Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit.

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

A prisoner/detainee must take all the steps required by the prison's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a prisoner's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *See Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37 (emphasis added).

Here, Plaintiff filed his grievance regarding being moved from Division X to Division IX on June 24, 2010. The grievance was handled as a request and Plaintiff received the response from Chief Howell on June 29, 2010. Plaintiff filed the instant lawsuit on June 24, 2010 (based on postmark). *See Edwards v. United* States, 266 F.3d 756, 758 (7th Cir. 2001) (under the "mailbox rule," prisoner pleadings are considered "filed" when given to the proper prison authorities for mailing, not when received by the district court clerk). Thus, Plaintiff filed suit prior to receiving a response to grievance/request and prior to fully exhausting his administrative remedies.

Furthermore, even if Plaintiff had filed suit after fully exhausting his administrative remedies, his retaliation claim fails.

To prevail on a claim of retaliation under the First Amendment, a plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *see also Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, Plaintiff can satisfy the first and second prong. It is well settled that inmates have a First Amendment right to use the prison grievance system. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003). It is equally well established that an act taken against an inmate in retaliation for his exercise of his First Amendment rights may form the basis of a civil rights suit, even if the same act, when taken for a different reason, would be otherwise permissible. *See, e.g.*, *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Bridges*, 557 F.3d at 541. Plaintiff's filing of grievances constituted activity protected by the First Amendment. Furthermore, Plaintiff established that he was moved to a different division and that while in that division he did not receive his medications. Nevertheless, Plaintiff has not established that there was a causal connection between the filing of the grievances and the transfer of Plaintiff to a new division 3 to 10 months after he filed the two grievances before being moved.

The undisputed facts show that Superintendent Martinez had no knowledge that Plaintiff had filed any other grievances other than the December 28, 2009, grievance and that Commander Plaxico had no knowledge of any other grievances filed by Plaintiff other than the May 21, 2009, grievance that was handed as a request. Neither Superintendent Martinez nor Commander Plaxico were named in either grievance. Furthermore, Commander Plaxico did not make the decision, nor did he have the authority, to transfer Plaintiff from Division X on April 3, 2010. Instead, Plaintiff was transferred, along with 31 other inmates, due to safety concerns at the jail. When undertaking a retaliation inquiry, the court should be careful to avoid "excessive judicial involvement in day-to-day prison management." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The court should afford appropriate flexibility and deference to prison officials when

evaluating a proffered legitimate penological reason for the alleged retaliatory conduct. *Id.* In order to defeat a motion for summary judgment, the nonmovant "must do more than baldly deny the reasonable inferences and facts presented" by the party seeking summary judgment. *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594 (7th Cir. 2007), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (explaining that an opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard*, 503 F.3d at 588, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Any circumstantial evidence against Defendants is far too tenuous for a trier of fact to find that the Defendants who were aware of one previous grievance had him transferred to cause him to not receive his medications. In sum, Plaintiff has failed to adduce sufficient evidence of retaliation to go to a jury.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [35] is granted. The clerk is directed to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 56. The case is terminated. Defendants' Motion to Strike Plaintiff's Discovery Requests or Stay Discovery Pending Ruling on their Motion for Summary Judgment [45] is denied as moot.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed.

R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Dated: March 27, 2012

JOHN W. DARRAH
United States District Court Judge